# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

CRYSTAL SUHR,                     )
                                  )
            Plaintiff,            )
                                  )
v.                                )   Case No. CIV-18-110-RAW-KEW
                                  )
COMMISSIONER OF SOCIAL            )
SECURITY ADMINISTRATION,          )
                                  )
            Defendant.            )

## REPORT AND RECOMMENDATION

Plaintiff Crystal Suhr (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 34 years old at the time of the ALJ's decision.

3

Claimant obtained a bachelor's degree in psychology. Claimant worked in the past as a bartender/waitress and office manager. Claimant alleges an inability to work beginning April 3, 2014 due to limitations resulting from pelvic nerve injury, Lyme disease, lupus, arthritis, fibromyalgia, pancreatitis, brain fog, concentration problems, and vision problems.

### Procedural History

On November 6, 2014, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On July 18, 2016, Administrative Law Judge ("ALJ") Elizabeth B. Dunlap conducted an administrative hearing by video with Claimant appearing in Paris, Texas and the ALJ presiding from Dallas, Texas. On May 2, 2017, the ALJ issued an unfavorable decision. On February 12, 2018, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from

4

severe impairments, she retained the residual functional capacity ("RFC") to perform sedentary work with limitations.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to include all of her limitations contained in the opinions of the consultative professionals; (2) failing to state the weight give to a psychological consultative examiner; (3) improperly relying upon the lack of mental health treatment to conclude she did not suffer from a severe mental impairment; and (4) failing to conduct a proper analysis of the paragraph B criteria in assessing the severity of Claimant's mental impairments at steps two and three.

### Evaluation of Functional Limitations

In her decision, the ALJ determined Claimant suffered from the severe impairments of pudendal neuralgia, fibromyalgia, migraine headaches, a history of Lyme disease, diffuse joint pain, and an unspecified mood disorder with anxious and depressed features. (Tr. 12). The ALJ concluded that Claimant retained the RFC to perform sedentary work except she could not interact with the public. The ALJ determined Claimant could understand, remember, and carry out only simple tasks as demanded by jobs rated in the *Dictionary of Occupational Titles ("DOT")* at reasoning

development level 2.  (Tr. 14).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of lens inspector, film inspector, and eyeglass packager, all of which were found to exist in sufficient numbers in the national and regional economies. (Tr. 18).  As a result, the ALJ found Claimant was not under a disability from April 3, 2014 through the date of the decision. (Tr. 19).

Claimant contends the ALJ failed to include all of the limitations found by the consultative professionals and to whose opinions she gave "great weight."  Dr. Laura Lochner performed a mental RFC assessment on Claimant on June 8, 2015.  She concluded Claimant was moderately limited in the ability to understand and remember detailed instructions, ability to carry out detailed instructions, and ability to interact appropriately with the general public.  (Tr. 64-66).  She also found Claimant could perform simple and some complex tasks, could relate to others on a superficial work basis, and could adapt to a work situation. (Tr. 66).  Claimant was also evaluated by Dr. Burnard Pearce on September 30, 2015.  He reached the same conclusions on Claimant's mental limitations as Dr. Lochner.  (Tr. 82-84).

The ALJ specifically gave the opinions of Dr. Lochner and Dr. Pearce "great weight" in assessing Claimant's mental RFC "based on their expertise." She recognized and imposed limitations on Claimant's ability to understand, remember, and carry out detailed instructions and to interact appropriately with the general public. (Tr. 17).

Claimant asserts that the ALJ should have included a limitation for "relating to others on a superficial work basis" in the RFC as reflected in Dr. Lochner's and Dr. Pearce's assessments. The ALJ is required to explain why she effectively rejects some functional restrictions while adopting others. Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). In this instance, the ALJ failed to explain the omission of the limitation to Claimant's ability to relate to others from the RFC while adopting the remainder of the consultative professionals' opinions. On remand, the ALJ shall consider this additional restriction in formulating the RFC.

Claimant also contends the ALJ failed to consider the standing and walking limitations found by her gynecologist, Dr. S. Abbas Shoberi, of "<2 hours." (Tr. 414). The ALJ expressly considered the sitting limitation by this same physician but rejected it

7

because the last time Dr. Shoberi attended Claimant was a year prior to rendering her opinion and because the treatment records "provide not supportability for his opinion."  (Tr. 16).

Similarly, the ALJ rejected the opinion of Dr. William Herron, Claimant's primary care physician.  Dr. Herron concluded Claimant could stand/walk for "< 2 hours" and sit for "< 2 hours" during an eight hour workday and must lie down for 35% of her walking hours due to pelvic pain.  He concluded that "Pt. has had chronic pelvic pain post delivery from damage to pudendal nerve."  (Tr. 416). The ALJ gave this opinion "no weight" because Dr. Herron's assessments on sitting and lying down "lack supportability." (Tr. 16).

Curiously, the ALJ only referenced the rejection of the sitting assessments for both Dr. Shoberi and Dr. Herron.  The standing assessments were not discussed other than mentioning that they exist.  While this Court might presume that the ALJ would reject the assessments on the standing limitation as well because of the general rejection of the opinions, the ALJ was specific in the rejection of only the sitting limitation.  This Court should not have to speculate on the ALJ's opinions and the ALJ is not permitted to ignore evidence contradictory to the finding of non-

8

disability. *See* Hamlin v. Barnhart, 365 F.3d 1208, 1219 (10th Cir. 2004). On remand, the ALJ shall expressly state whether Dr. Shoberi's and Dr. Herron's limitations on standing were considered and the position taken on their viability.

**Consideration of the Opinion of the Consultative Examiner**

Claimant also contends the ALJ failed to expressly state the weight he gave to the opinion of Dr. Theresa Horton, a consultative psychologist. Claimant also states that the ALJ only made rote findings on considering Dr. Horton's assessment.

Dr. Horton conducted a mental status examination of Claimant on June 3, 2015. She diagnosed Claimant with Unspecified Mood Disorder, with anxious and depressed features. She concluded that Claimant "appears capable of understanding, remembering and managing most simple and complex instructions and tasks, though her pace in problem solving does appear delayed at times, likely in relation to poor concentration. She does appear capable of adequate social/emotional adjustment to most settings." (Tr. 318-20).

Dr. Horton's findings appear to be more restrictive than those imposed in the RFC developed by the ALJ. Yet, the ALJ failed to provide a weight for Dr. Horton's opinion such that this Court

9

could evaluate the propriety of the bases for the ALJ's conclusions on Dr. Horton's opinion.  The ALJ must evaluate every medical opinion in the record.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must also explain in the decision the weight given to the medical opinions.  Soc. Sec. R. 96-6p, 1996 WL 374180.  An ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."  Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007).  On remand, the ALJ shall provide her analysis of the weight which she afforded Dr. Horton's opinion.

## Reliance Upon Lack of Treatment

Claimant also contends the ALJ improperly relied upon the fact Claimant did not seek mental health treatment for determining the condition was non-severe.  (Tr. 17).  On remand, the ALJ shall evaluate the condition under the rubric of step two rather than the lack of treatment.  *See* Grotendorst v. Astrue, 370 Fed. Appx. 879 (10th Cir. 2010).

## Analysis of the Paragraph B Criteria

Claimant contends the ALJ erred in her analysis of the Paragraph B criteria.  This criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2

and 3 of the sequential evaluation process." Soc. Sec. R. 96-8p. Since the ALJ is required to re-evaluate Dr. Horton's opinion, she should also consider the totality of the evidence in analyzing the Paragraph B criteria on remand.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the case REMANDED** for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 13th day of September, 2019.

Kimberly E. West
United States Magistrate Judge
Eastern District of Oklahoma